IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

APRIL R. BENNETT                                                                                   PLAINTIFF

v.                                               4:14-cv-04118-BAB

CAROLYN W. COLVIN, Acting Commissioner
Social Security Administration                                                               DEFENDANT

## MEMORANDUM OPINION

Plaintiff, April Bennett, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claim for a period of disability, supplemental security income ("SSI"), and disability insurance benefits ("DIB") under the provisions of Titles II and XVI of the Social Security Act ("Act").  The Parties have consented to the jurisdiction of a magistrate judge to conduct any and all proceedings in this case, including conducting the trial, ordering the entry of a final judgment, and conducting all post-judgment proceedings. (ECF No. 5).[1]  Pursuant to this authority, the Court issues this memorandum opinion and orders the entry of a final judgment in this matter.

**I.     Background:**

Plaintiff protectively filed her applications for DIB and SSI on March 22, 2012, alleging an onset date of April 8, 2011, due to heart problems, high blood pressure, and depression.  (Tr. 9, 226).

---

[1] The docket numbers for this case are referenced by the designation "ECF No. __."  The transcript pages for this case are referenced by the designation "Tr."

For DIB purposes, Plaintiff retained insured status through June 30, 2014. (Tr. 11, Finding 1). Plaintiff's application was denied initially and on reconsideration. An administrative hearing was held on June 12, 2013, at which Plaintiff appeared with counsel and testified. (Tr. 68-104). A vocational expert ("VE") and non-examining consulting physician were also present and testified.

On July 17, 2013, the Administrative Law Judge ("ALJ") entered an unfavorable decision. (Tr. 9-23). In this decision, the ALJ determined Plaintiff had the severe impairments of acute myocardial infarction and depression. (Tr. 11, Finding 3). After reviewing all of the evidence presented, however, the ALJ determined Plaintiff's impairments did not meet or equal the level of severity of any impairment listing. (Tr. 15-16, Finding 4).

The ALJ next evaluated Plaintiff's subjective complaints and determined her RFC. (Tr. 17-21). The ALJ first evaluated Plaintiff's subjective complaints and found she was not entirely credible. (Tr. 17-20). The ALJ then found Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work with the following limitations:

> [she may only] lift and carry 10 pounds occasionally and less than 10 pounds frequently, stand and walk for 4 hours of an 8-hour workday, sit for 6 hours of an 8-hour work day, with a break period of 15 minutes every 2 hours. The claimant should never climb ladders, ropes or scaffolds, occasionally climb ramps and stairs, occasionally bend, kneel, crawl, crouch and stoop. The claimant has no manipulative limitations. The claimant should avoid exposure to unprotected heights, moving machinery and commercial driving, and avoid exposure to extreme temperature changes and vibration. Mentally, the claimant is able to perform simple and repetitive tasks. She is able to maintain concentration, persistence and pace, use judgment adequately and tolerate routine changes in the work setting. The claimant is able to relate adequately to supervisors and coworkers but cannot be exposed or be in contact with the general public. (T. 17).

With the help of the VE, the ALJ determined Plaintiff could not perform her past relevant work ("PRW"). (Tr. 22, Finding 6). Based on the VE's testimony, the ALJ found Plaintiff could

perform the requirements of the representative occupations of eyeglass lense inserter, electronics dial marker, and film inspector. (Tr. 22-23, Finding 10). The ALJ then concluded Plaintiff was not disabled. (Tr. 23, Finding 11).

On July 31, 2013, Plaintiff requested the Appeals Council review the ALJ's unfavorable decision, which denied the request on August 18, 2014. (Tr. 1-3). On September 16, 2014, Plaintiff filed the present appeal. (ECF No. 1). The Parties consented to the jurisdiction of this Court on September 18, 2014. (ECF No. 5). Both Parties have filed appeal briefs, and the case is ready for decision. (ECF Nos. 10, 11).

**II.    Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance, but it is enough a reasonable mind would find it adequate to support the Commissioner's decision. "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision." *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record to support the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record to support a contrary outcome, or because the Court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the

evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

To determine whether a claimant suffers from a disability, the Commissioner uses a five-step sequential evaluation. She determines: (1) whether the claimant is presently engaged in a substantial gainful activity; (2) whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations (if so, the claimant is disabled without regard to age, education, and work experience); (4) whether the claimant has the RFC to perform her PRW; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove there are other jobs in the national economy the claimant can perform. 20 C.F.R. §§ 404.1520(a)-(f); *Cox*, 160 F.3d at 1206. The fact finder only considers Plaintiff's age, education, and work experience in light of her RFC if the final stage of this analysis is reached. *See* 20 C.F.R. §§ 404.1520, 416.920.

**III.   Discussion**:

Plaintiff argues the ALJ: (1) failed to develop the record, (2) failed to include additional RFC limitations, and (3) improperly relied on VE testimony. (ECF No. 10 at 2-18).

**A. Development of the Record**

Plaintiff argues the ALJ should have ordered a consultative cardiac evaluation or contacted a treating physician to further investigate her heart condition. (ECF No. 10 at 18).

The ALJ has the duty to fully and fairly develop the record, even when the Plaintiff is represented by counsel. If a physician's report of a claimant's limitations are stated only generally, the ALJ should ask the physician to clarify and explain the stated limitations. *See Vaughn v.*

*Heckler*, 741 F. 2d 177, 179 (8th Cir. 1984). An ALJ is required to order medical examinations and tests if the existing medical records do not provide sufficient medical evidence to determine the nature and extent of a claimant's limitations and impairments. *See Barrett v. Shalala*, 38 F. 3d 1019, 1023 (8th Cir. 1994). The ALJ must develop the record until the evidence is sufficiently clear to make a fair determination. *See Landess v. Weinberger*, 490 F. 2d 1187, 1189 (8th Cir. 1974). In addition, a claimant must show not only that the ALJ failed to fully and fairly develop the record, but she must also show she was prejudiced. *See Onstad v. Shalala*, 999 F.2d 1232, 1234 (8th Cir. 1993).

The record, in this case, includes treatment notes from Plaintiff's cardiologists, a consultative exam by Dr. Dario Espina at the Arkansas Heart Center on September 27, 2011, two opinions from consulting physicians, and the testimony of Dr. John Vorhies, a non-examining consultant. (Tr. 72-74, 472-475, 479-487, 656-667, 741, 746, 757, 768). The evidence shows Plaintiff recovered from a myocardial infarction in May 2010, although she was generally non-compliant with her prescribed treatment and failed to take her medications. (Tr. 74-75, 81-82, 757). Dr. Vorhies testified the evidence showed Plaintiff's examinations were normal and she showed no indication of ongoing ischemia. (Tr. 18, 72-74). Chest x-rays and an EKG from October 2011, a stress test in March 2012, and a chest x-ray in October 2012 showed no abnormalities. (Tr. 490-491, 656-667, 768). This was substantial evidence for the ALJ to conclude Plaintiff's mental impairments were not disabling without a further evaluation. *See Dunahoo v. Apfel*, 241 F.3d 1033, 1039-1040 (8th Cir. 2001); s*ee also McCoy v. Astrue*, 648 F.3d 605, 612 (8th Cir. 2011) ("While an ALJ does have a duty to develop the record, this duty is not never-ending and an ALJ is not required to disprove every possible impairment ..."). Finally, Plaintiff has not presented any evidence to show further

development of the record would change the ALJ's decision. Absent unfairness or prejudice, reversal for failure to develop the record is not warranted. *Shannon v. Chater*, 54 F.3d 484, 488 (8th Cir. 1995).

Accordingly, the undersigned finds no basis for remand on this issue.

**B. RFC Assessment**

Plaintiff believes the ALJ erred by not including additional RFC limitations to accommodate her mental conditions. (ECF No. 10 at 11-15).

Prior to Step Four of the sequential analysis in a disability determination, the ALJ is required to determine a claimant's RFC. *See* 20 C.F.R. § 404.1520(a)(4)(iv). This RFC determination must be based on medical evidence that addresses the claimant's ability to function in the workplace. *See Stormo v. Barnhart*, 377 F.3d 801, 807 (8th Cir. 2004). The ALJ should consider "'all the evidence in the record' in determining the RFC, 'including the medical records, observations of treating physicians and others, and an individual's own description of her limitations.'" *Id*. (quoting *Krogmeier v. Barnhart*, 294 F.3d 1019 (8th Cir. 2002). The Plaintiff has the burden of producing documents and evidence to support her claimed RFC. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *Cox*, 160 F.3d at 1206.

The ALJ, however, bears the primary responsibility for making the RFC determination and for ensuring there is "some medical evidence" regarding the claimant's "ability to function in the workplace" that supports the RFC determination. *Lauer v. Apfel*, 245 F.3d 700, 703-04 (8th Cir. 2001). This Court is required to affirm the ALJ's RFC determination if the determination is supported by substantial evidence on the record as a whole. *See McKinney v. Apfel*, 228 F.3d 860, 862 (8th Cir. 2000).

The record shows Plaintiff sought intermittent treatment for depression and anxiety at the Southwest Arkansas Counseling and Mental Health Center. (Tr. 430-452, 782-841). Plaintiff established treatment in April 2011 with complaints of anxiety and depression after being fired for failing a drug test. (Tr. 430-438). On April 11, 2011, Ms. Sandra Wilson, a licensed psychological examiner, assessed Plaintiff with major depression. (Tr. 452).

Plaintiff was evaluated by Dr. Oladele Adebogun on April 25, 2011, who noted her symptoms were "mainly loss of interest, low motivation, [and] easy tiredness." (Tr. 439). He diagnosed generalized anxiety disorder, and prescribed citalopram, haloperidol, lorazapam and cognitive therapy. (Tr. 439). At a follow-up with Dr. Adebogun on May 24, 2011, Plaintiff's prescriptions were continued and she reported "doing very well on her medicines [and her] anxiety is well under control." (Tr. 441). Plaintiff saw Ms. Wilson again on June 30, 2011, who counseled Plaintiff on relationship and financial issues and offered referrals to indigent health clinics in the area to assist with treatment and medications. (Tr. 445). Plaintiff then discontinued treatment after missing several appointments. (Tr. 442-444, 800, 803).

Plaintiff re-established care in June 2012, and was assessed with generalized anxiety disorder and mood disorder. (Tr. 792, 797). Follow-up notes from June 30, 2012, indicate Plaintiff's primary stressor was her risk of violence from others, and she was counseled on steps to resolve her crisis. (Tr. 804). At a follow-up with a counselor on July 12, 2012, Plaintiff reported being melancholy and having trouble sleeping, but had a "generally positive attitude." (Tr. 791). On August 6, 2012, counseling notes show her financial situation had improved and she was exercising and assisting at a "local nursing home as a volunteer to get out of her home setting." (Tr. 788).

Plaintiff saw Dr. Adebogun in October 2012 after being attacked and was prescribed Zyprexa

to help with her acute stress. (Tr. 837). At a follow-up with Dr. Adebogun on March 5, 2013, she reported doing well on her medications, which improved her sleep and depression. (Tr. 839). Dr. Adebogun noted Plaintiff was "cooperative, pleasant, cheerful, and easy to warm up," and continued Plaintiff citalopram, trazadone, and lorazepam. (Tr. 839). Dr Adebogun submitted a Mental Impairment Evaluation form dated the same day and opined Plaintiff had problems interacting with others, following instructions, and concentrating. (Tr. 883-834). He anticipated Plaintiff could not complete a full workday and would be absent more than three times per month. (Tr. 834).

The ALJ appropriately discounted Dr. Adebogun's opinion Plaintiff could not perform a full work day and would be excessively absent, but concluded Dr. Adebogun's Mental Impairment Evaluation is given "some but not full weight on the matter." (Tr. 21). The remaining evidence suggests Plaintiff's depression and anxiety was primarily triggered by acute relationship and financial problems. Plaintiff did not seek consistent treatment for her mental conditions, and her conditions improved with medication and counseling. (Tr. 441, 788, 791, 837). On Plaintiff's function report, she reported normal daily activities and indicated she had no problems with concentration, understanding, or getting along with others. (Tr. 266, 269). The RFC assessment was also supported by the opinion of Dr. Brad Williams, a non-examining consultant, who opined Plaintiff could perform unskilled work, and was informed by Dr. Adebogun's treatment notes and opinions. (Tr. 455). This was substantial evidence for the ALJ to conclude Plaintiff's mental impairments were not disabling. *See Dunahoo,* 241 F.3d 1039-1040.

Accordingly, the undersigned finds the ALJ's RFC determination is based on substantial evidence.

**C. Step Five Determination**

Plaintiff contends the ALJ improperly relied on VE testimony because, according to Plaintiff, the VE testified there was no competitive employment available to the hypothetical person described by the ALJ. (ECF No. 10 at 3-7).[2]

The ALJ posed a hypothetical question to the VE that described a person limited to light work with the following non-exertional limitations:

> The individual requires a rest period of . . . at least 15 minutes every two hours[.] The individual does not have any manipulative limitations. Is able to perform handling, fingering, feeling, reaching in all directions.
>
> The individual is unable to be exposed to unprotected heights, moving machinery, or commercial diving. The individual cannot be exposed to extreme temperature changes or vibrations. The individual is able to kneel, crawl, crouch, stoop . . . occasionally. The individual can climb stairs occasionally, but never scaffolds, ropes, or ladders.
>
> Mentally the individual is able to perform simple and repetitive tasks. The individual is able to relate adequately to supervisors and coworkers. She is unable to be exposed or work with the general public. The individual is able to maintain concentration, persistence and pace; able to use judgment adequately; and able to tolerate routine changes in the work setting.

(Tr. 99). In response, the VE initially responded there were no jobs available to the hypothetical person because a "15-minute break every two hours would preclude competitive employment." (Tr. 100). Plaintiff quotes this portion of the hearing in her brief, which is taken out of context to support her argument. (ECF No. 10 at 5-6).

---

[2] Plaintiff additionally states the ALJ and VE "agreed there are only 3 breaks during a shift, and now they are finding Plaintiff's employer would allow 4 breaks based on this testimony . . . which is precluded by DOT standards." (ECF No. 10 at 6-7). There is no reference to a fourth break anywhere in the transcript or the ALJ's decision.

After the VE testified no competitive employment was available, the ALJ clarified the 15-minute break was not an additional break, but a regular 15-minute break at the employer's schedule. (Tr. 100). The ALJ then modified the hypothetical to sedentary work with the same non-exertional limitations. (Tr. 100-101). In response, the VE testified the hypothetical person could perform the occupations of eyeglass lens inserter, electric valve marker, and film inspector. (Tr. 101-102).

"A hypothetical question must precisely describe a claimant's impairments so that the vocational expert may accurately assess whether jobs exist for the claimant." *Newton v. Chater*, 92 F.3d 688, 694-95 (8th Cir. 1996). Having thoroughly reviewed the hearing transcript, along with the entire evidence of record, the undersigned finds that the hypothetical the ALJ posed to the VE fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole. *See e.g., Rappoport v. Sullivan*, 942 F.2d 1320, 1322 (8th Cir. 1991). The VE stated jobs existed in both the national and regional economy for Plaintiff's vocational profile. Such testimony, based on hypothetical questions consistent with the record, constitutes substantial evidence. *See Goff v. Barnhart*, 421 F.3d 785, 794 (8th Cir. 2005).

**IV.   Conclusion:**

Based on the foregoing, the undersigned finds that the decision of the ALJ, is supported by substantial evidence and should be affirmed. A judgment incorporating these findings will be entered pursuant to Federal Rules of Civil Procedure 52 and 58.

**Dated this 10th day of August, 2015.**

/s/   Barry A. Bryant
HON. BARRY A. BRYANT
U.S. MAGISTRATE JUDGE